COVENANT.

*Case* 77.

*April* 13.

The case stated.

## Burns *vs* Allen, &c.

### ERROR TO THE BATH CIRCUIT.

*Declaration. Breaches. New trial. Arrest of judgment.*

JUDGE MARSHALL delivered the Opinion of the Court.

BY articles of agreement entered into in October, 1836, between Burns on the one part and Allen, &c. on the other. Burns purchased of Allen, &c. 800 hogs, to be delivered at Petersburg, Georgia, on or before the 10th day of January, 1837, and paid for by Burns in fifteen days thereafter, at the rate of seven dollars per hundred pounds, gross weight, he to pay the expenses incurred, after delivery, and reserving the right of designating a different point not more distant than that named in the articles for delivery.

The declaration by Allen, &c. on this covenant alledges, that on the 24th of December, 1836, the plaintiffs did deliver to the defendant's agent, and by his election at a different place from that named in the covenant, sixty-one head of the said hogs, weighing 14,871 lbs. gross; and that afterwards, and before the 10th day of January, 1837, at another named place designated by the defendant's agent, they offered to deliver the residue of the said 800 hogs in good order, &c. but were *prevented,* &c. by the absence of the defendant and the refusal of his agent, &c. and that the defendant had not paid for the sixty-one hogs, &c. &c. nor for the residue of the 800 hogs, nor had he paid the expenses incurred on said residue, after the offer to deliver them. The defendant by his plea, denied the delivery of the sixty-one hogs and the offer to deliver the others as alledged, and issue being taken, the jury found for the plaintiffs $1299 48 in damages, on which judgment was rendered for the same sum. No exception was taken to any opinion of the Court rendered in the progress of the trial; no motion was made for a new trial, and none in arrest of judgment; but the defendant, Burns, prosecutes this writ of error for the reversal of the judgment, on the sole

ground that although there is one good breach alledged in the declaration, yet as there is at least one bad breach, viz: in regard to the non-payment of expenses incurred on the hogs, which were not received after they were offered and refused; and as the verdict was general, not designating the breach for which the damages were assessed, the judgment was not authorized by the pleadings and verdict, and should therefore be reversed.

It is a well established doctrine in the English practice, and has been recognized in this State, that if the declaration contain one bad breach, with one or more good ones, and there be a general verdict, the judgment, nothing more appearing, should be arrested. The same doctrine prevails in England, if the declaration consist of several good counts and one bad one, which is in principle the same case. And it may be doubted whether the statute of Kentucky, which, although the English rule in the case of one bad count, when the declaration contains also a good one, might not, by reasonable construction, have been extended to the case of one bad breach, where the same count contains one or more besides, which are good. But the statute has received a literal construction, and we are not now to depart from it.

*According to the English practice if the declaration contain one bad breach with one or more good breaches, nothing farther appearing, it is error to enter judgment thereon; and so if the declaration contain several good counts and one bad—*

The only reason why the judgment should be arrested in either of the cases, is, that it is uncertain whether the verdict may not have been founded upon the defective count or breach; and it is accordingly laid down, where a general verdict has been taken on evidence given, only on the good counts, the Court (in England) will permit the verdict to be *amended* by the notes of the Judge before whom the trial was had; or if it appear by the Judge's notes that the damages were calculated on evidence applicable to the good counts only, the Court will amend the verdict by entering it on those counts, though evidence was given applicable to the bad counts also: 1 *Chitty's Pl. (ed.* 1833,) *p.* 448; 2 *Saunders* 171, *b. &c.* It is apparent therefore, that the circumstance that the verdict is general in its form upon a declaration containing one bad count, or upon a count containing one bad breach together with others which are good, will not itself be a conclusive ground for arresting the judg-

*But in England if evidence be offered applicable to the good counts only, the verdict may be amended by the Judges' notes, & judgment permitted to stand—*

ment; but that if the verdict be in fact rendered on evidence applicable only to the good count or breach; this, if ascertained, will furnish sufficient ground for obviating the objection to its form, and that the Court whose duty it is to render or refuse the judgment, will resort to other means even out of the record, for ascertaining whether the verdict is in fact founded on the good count or breach, and will even change the record so as to make the verdict comport with the fact, and then render the judgment.

In England, the means of ascertaining the fact were furnished to the Court in bank, by which the judgment was to be rendered or refused, by the notes of the Judge who presided over the trial of the issue at *nisi prius.* In this State they are furnished by the personal knowledge of the Judge himself, who is to render or refuse the judgment, and who, having presided at the trial, may know that no evidence was offered under the defective breach, or that if offered, it was rejected, or that the jury were instructed to disregard it and did so, or by comparison of the verdict with the evidence, he may know that the damages were, in fact, assessed upon the good breach alone. Such knowledge, derived in any of these modes, would undoubtedly authorize the Circuit Judge to overrule a motion in arrest of judgment, if made in that Court; and if, as he might and should do, (if they did not otherwise appear,) he should, on overruling the motion, state the ground of his knowledge, or if they otherwise appeared, his judgment would be affirmed by this Court, and perhaps it should be affirmed on the presumptions arising in support of it, even without any such statement, or perhaps he might cause the verdict to be amended.

It is apparent then, that in considering the question, made in this Court for the first time, whether the judgment should have been arrested or should now be reversed because there is a general verdict and a declaration containing one bad breach with one or more good ones, a question which might be affected by circumstances, *dehors* the pleadings and verdict, we are deprived of those grounds of determination which the Circuit Judge would

*Where a verdict and judgment has been rendered in the Court below, on a declaration containing some good and some bad breaches, and no objection to evidence, motion for a new*

have had, and which we might and probably should have, if a motion in arrest had been made before him; and that we are called upon to revise a judgment without the facts and appropriate means of knowing those facts by which, although not appearing in the pleadings and verdict, the technical objection exhibited by them might have been obviated and the judgment fully justified. If this state of things does not furnish sufficient ground, on the principle which requires the most favorable presumptions in favor of the judgment, to require or even to authorize our refusal to consider the objection when made here for the first time, it at least authorizes us to take hold of every presumption fairly arising from the record which will tend to show that the verdict was, in fact, founded upon evidence applicable to the good breach only, and thus to support the judgment. Indeed, the statute already referred to, which authorizes a judgment if there be one good count, though the verdict be general, is based upon the presumption that if any evidence should be offered under the bad counts, it is either rejected by the Court or disregarded by the jury, and it is by no means certain that a similar presumption ought not to be indulged in case of a single count containing good and bad breaches.

Such a presumption would derive considerable weight in this case, from the favorable inference which might be drawn from the fact that no exception was taken to any opinion of the Court during the trial, and no motion afterwards made either for a new trial or in arrest of judgment.

But besides all this, there is a most minute and precise coincidence between the damages assessed and the sum produced by the price of the 61 hogs, of the weight alledged in the declaration, with interest thereon from the time of payment, fixed by the contract, up to the time of trial, on the 16th and 17th of March, 1841, so that an inference arises on the face of the record itself, that the verdict was, in fact, given for and confined to the price of these hogs, with interest. And, moreover, upon examining the declaration, we are of opinion that it contains no sufficient averment which in strict propriety,

BURNS
vs
ALLEN, &c. ..

trial or in arrest of judgment, this Court will not reverse the judgment, but presume that the verdict and judgment thereon was rendered upon testimony applicable to the good breaches only.

Where the recovery is such as the record shows; the party had a right to recover on a good breach in the declaration, this Court will not presume that evidence was heard and the damages assessed on a bad breach.

would authorize the admission of evidence showing more than nominal damage for the non-payment of expenses incurred on the hogs, not received by the defendant, Burns, even if the articles of agreement had contained such a covenant as this breach supposes; for it is no where averred that any expenses had been actually incurred after the offer and refusal; so that to defeat this judgment, we must not only presume that evidence was admitted by the Court and considered by the jury in support of an alledged breach, which is in truth no breach of the contract, but that it was admitted and considered as proof of damages to an extent to which it would not have been properly admissible even if this supposed breach had been a real one; and this too against the strong coincidence and other circumstances already noticed, which tend to the opposite conclusion.

Under all these considerations we are of opinion that the fair deduction from the whole record is, that the damages were assessed upon evidence applicable only to the good breach, and that any evidence which may have been offered under the bad breach, was either rejected by the Court or not considered by the jury in their assessment of damages, and that in such a state of case, the judgment should not be reversed upon the error assigned.

Wherefore, the judgment is affirmed.

*Hanson* for plaintiff; *Peters* for defendants.

---

<div align="right">

REPLEVIN.

*Case* 78.

*April* 14.

The case stated.